# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| Christen Souders<br>3236 Zone Avenue<br>Toledo, Ohio 43617 | * <br> * <br> * | Case No. 3:17-cv-1152 <br><br> JUDGE |
| Plaintiff, | * | |
| | | MAGISTRATE JUDGE |
| v. | * | |
| A+ Building Maintenance and Home Repair, LLC<br>230 Vance St.<br>Toledo, Ohio 43604 | * <br><br> * <br><br> * | **COMPLAINT** <br><br> **JURY DEMAND ENDORSED HEREON** |
| - and - | * | |
| Nick Carpenter, individually<br>230 Vance St.<br>Toledo, Ohio 43604 | * <br><br> * | |
| Defendants. | * | |

Now comes Christen Souders ("Plaintiff"), by and through undersigned counsel, and proffers this Complaint for damages against A+ Building Maintenance and Home Repair, LLC ("Defendant ABMH") and Nick Carpenter ("Defendant Carpenter" or "Carpenter") (collectively hereinafter "Defendants") as follows:

## I. JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, (the "Ohio Wage Act"), O.R.C. §§ 4111 *et seq.*, and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"). Plaintiff also claims disability discrimination against Defendant ABMH in violation of Ohio Revised Code Chapter

1

4112 ("Chapter 4112"). Plaintiff brings this action to obtain relief provided in Chapter 4112 as a result of Defendant AMBH's discriminatory and retaliatory conduct towards her resulting in loss of wages, compensation, and benefits.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy.

3. Venue properly lies in this forum pursuant to 28 U.S.C. § 1391, because Defendants employed Plaintiff Souders in the Northern District of Ohio, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants conduct substantial business in this judicial district.

## II. THE PARTIES

4. Plaintiff Christen Souders is an individual, United States citizen, and resident of the State of Ohio living in the Northern District of Ohio.

5. At all times relevant herein, Plaintiff was jointly employed by Defendant AMBH and Defendant Carpenter from approximately October, 2014 through May 8, 2017 as a bookkeeper.

6. As a bookkeeper, Plaintiff was an hourly, non-exempt employee of Defendants as defined in the FLSA, the Ohio Wage Act, and the OPPA. She was also an "employee" as that term is defined in Chapter 4112.

7. As a bookkeeper, Plaintiff's primary job duties consisted of assisting with billing customers, logging the location of services provided to customers, collections of bills, calling

customers for unpaid invoices, filing billing paperwork in the internal file room, moving file boxes in the storage room, and confirming the weekly deposit to be given to Defendant Carpenter.

8. Defendant ABMH is a domestic limited liability company with its principal place of business in the Northern District of Ohio.

9. Upon information and belief, Defendant Carpenter is the founder and sole member of Defendant ABMH. Defendant Carpenter is also Defendant ABMH's statutory agent.

10. Defendants are actively doing business, jointly and individually, in this judicial district. At all times relevant, Defendants are and have each been, jointly and individually, an "employer" as that term is defined by the FLSA, the Ohio Wage Act, and the OPPA.

11. Defendant ABMH is also an employer as that term is defined in Chapter 4112.

12. During relevant times, Defendants jointly maintained control, oversight, and direction over Plaintiff and other similarly situated employees, including the promulgation and enforcement of policies affecting the payment of wages, including overtime compensation.

13. During relevant times, Defendant ABMH and Defendant Carpenter mutually benefitted from the work performed by Plaintiff.

14. During relevant times, Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiff and other similarly situated employees.

15. During relevant times, Defendants shared the services of Plaintiff and other similarly situated employees.

16. During relevant times, Defendant ABMH and Defendant Carpenter acted directly or indirectly in the interest of each other in relation to Plaintiff and those similarly situated.

17. Upon information and belief, Defendants, jointly and individually, operate and control an enterprise and employs employees engaged in commerce or in the production of goods for commerce, or have had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and Defendants have had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

18. During relevant times, Defendant Carpenter has jointly owned, operated, and/or managed Defendant ABMH.

19. During relevant times Defendant Carpenter has jointly been involved in the operational decisions of Defendant ABMH.

20. During relevant times, Defendant Carpenter has been jointly involved in the employment decisions of Defendant ABMH, including, but not limited to, decisions about Defendants' wage and hour polices and/or practices that affect Plaintiff and all other similarly situated employees.

21. Upon information and belief, Defendants, at all times relevant hereto, were fully aware of the fact that they were legally required to comply with the wage and overtime laws of the United States and of the State of Ohio as well as record keeping laws of the State of Ohio.

### III. STATEMENT OF FACTS

22. Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

23. In or around October, 2014, Plaintiff began working for Defendants as a bookkeeper until her employment ended on or about May 8, 2017.

24. A bookkeeper is a nonexempt position.

25. Plaintiff was misclassified as a salaried exempt employee since the beginning of her employment relationship with Defendants.

26. Plaintiff regularly worked from approximately 8:00 am until 5:00 pm, Monday through Friday, which amounts to approximately forty-five (45) hours per week.

27. Plaintiff was initially compensated on a salaried basis in the amount of approximately $480 per week from approximately October, 2014 until the beginning of December, 2014.

28. During this time period, Plaintiff was misclassified as a salaried exempt employee even though she should have been classified as an hourly nonexempt employee because her primary job duties consisted of those associated with a bookkeeper as delineated herein.

29. Upon information and belief, Plaintiff worked in excess of forty (40) hours per week from October, 2014 until the beginning of December, 2014, but was not paid time-and-a-half ("overtime rate") for all hours worked in excess of forty (40) in any workweek.

30. Despite Defendants' misclassification of Plaintiff, in December, 2014, Plaintiff's weekly wages were reduced depending on the number of hours worked in a workweek, including when she worked below forty (40) hours per week. (*See* **Exhibit A**)

31. Plaintiff's weekly wages were also reduced depending on the number of hours she worked in a workweek, including when she worked below forty (40) hours per week at various times throughout 2015 and 2016. (*See* **Exhibit A**)

32. As such, even though Plaintiff was misclassified as a salaried exempt employee since the beginning of her employment relationship with Defendants, at the very moment her weekly wages were reduced in 2014, Defendants' misclassification of her as a salaried employee

failed the salary basis test and converted her into an hourly employee given her primary job duties as a bookkeeper remained unchanged.

33. However, Defendants willfully continued to compensate Plaintiff on a salaried basis in 2014 through 2017, ranging from $480 per week to $525 per week.

34. Accordingly, from approximately December, 2014 through the date of her termination on May 8, 2017, Plaintiff was misclassified because she was at all times relevant an hourly nonexempt employee of Defendants.

35. As a bookkeeper, Plaintiff's primary job duties consisted of assisting with billing customers, logging the location of services provided to customers, collections of bills, calling customers for unpaid invoices, filing billing paperwork in the internal file room, moving file boxes in the storage room, and confirming the weekly deposit to be given to Defendant Carpenter.

36. Plaintiff neither primarily performed managerial duties nor supervised two or more employees.

37. Plaintiff could not hire, fire, or discipline employees.

38. Plaintiff's primary job duties did not consist of the exercise of discretion and independent judgment with respect to matters of significance.

39. Thus, at all times relevant, Plaintiff was employed as a non-exempt hourly employee entitled to overtime wages for all hours worked in excess of forty (40) in any workweek.

40. During the three years preceding the filing of Plaintiff's Complaint, Defendants did not pay Plaintiff one-and-a-half times her regular hourly rate for all compensable hours she worked in excess of forty (40) in a workweek.

41. During the three years preceding the filing of Plaintiff's Complaint, Plaintiff regularly worked from approximately 8:00 am until 5:00 pm, Monday through Friday, which amounts to approximately forty-five (45) hours per week.

42. However, Plaintiff was only compensated for forty (40) hours per week during all times relevant even though Defendants knew or should have known with reasonable due diligence that Plaintiff worked in excess of forty (40) hours per week during all times relevant given her work scheduled and company records.

43. Defendants knew or should have been aware that Plaintiff worked in excess of forty (40) hours in a workweek, but willfully elected not to compensate her for all hours worked in excess of forty (40) during the three years preceding the filing of this Complaint.

44. Instead, Defendants continued to compensate Plaintiff a weekly wage regardless of the number of compensable hours she worked on behalf of Defendants.

45. Defendants' failure to pay Plaintiff resulted in unpaid wages, including overtime wages, liquidated damages, costs, and attorneys' fees.

46. In the alternative, Defendants misclassified Plaintiff as an exempt employee when it knew or should have known through due diligence that Plaintiff either was not compensated on a salaried basis or that, if she was compensated on a salaried basis, that Plaintiff primarily performed non-exempt job duties and should have been paid her overtime rate for all hours worked in excess of 40 in any workweek.

### IV. CAUSES OF ACTION

### COUNT I
### (FLSA – Unpaid Overtime)

47. All of the preceding paragraphs are realleged as if fully rewritten herein.

48. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.

49. The FLSA requires that covered employees be compensated for every hour worked in a workweek. *See* 29 U.S.C. § 206(b).

50. The FLSA requires that non-exempt employees receive overtime compensation for hours worked in excess of forty (40) per week. *See* 29 U.S.C. § 207(a)(1).

51. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, she was not an "executive," "administrative," or "professional" employee and did not primarily perform job duties associated with these exemptions, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.1, *et seq*.

52. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, she was not a "learned professional" employee and did not primarily perform job duties associated with this exemption, as that term is defined under the FLSA. *See* 29 CFR § 541.301.

53. During the three years preceding the filing of this Complaint, Defendants employed Plaintiff.

54. Plaintiff routinely worked in excess of forty hours per week during the three years preceding the filing date of this lawsuit.

55. Plaintiff should have been paid the overtime premium for all hours worked in excess of forty hours per workweek because her primary job duties were nonexempt.

56. Defendants failed to pay Plaintiff the overtime premium required by the FLSA despite knowing or reason to know through reasonable due diligence that Plaintiff was nonexempt and regularly worked in excess of 40 hours in a workweek.

57. Defendants knew or should have known of the overtime payment requirements of the FLSA.

58. The exact total amount of compensation, including overtime compensation, that Defendants have failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants or were not kept by Defendants because they misclassified Plaintiff.

59. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, and all other remedies available, as result of Defendants' willful failure and refusal to pay overtime wages in violations of Sections 6 and 7 of the Act (29 U.S.C. §§206-207).

## COUNT II
### (Ohio Revised Code § 4111.03 – Unpaid Overtime)

60. All of the preceding paragraphs are realleged as if fully rewritten herein.

61. This claim is brought under Ohio law.

62. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek. *See* O.R.C. §§ 4111 et seq.; *See also* 29 U.S.C §206(b).

63. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938. *See* O.R. C. § 4111.03 (A), *See also* 29 U.S.C. § 207 (a)(1).

64. Plaintiff was a covered employee entitled to the Ohio Wage Act's protections.

65. Plaintiff was not exempt from receiving Ohio Wage Act overtime benefits because she was not an exempt "executive," "administrative," or "professional" employee and did not primarily perform job duties associated with these exemptions, as those terms are defined under the FLSA. *See* O.R.C. 4111.03(A); *see also* 29 C.F.R. §§ 541.0, *et seq.*

66. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, she was not a "learned professional" employee and did not primarily perform job duties associated with this exemption, as that term is defined under the FLSA. *See* 29 CFR §541.301.

67. Defendants are covered employers required to comply with the Ohio Wage Act's mandates.

68. Defendants violated the Ohio Wage Act with respect to Plaintiff by failing to compensate her at the rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek.

69. In violating the Ohio Wage Act, Defendants acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

70. For Defendants' violations of the Ohio Wage Act, Plaintiff has suffered damages and is entitled to recover unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available.

## COUNT III
### (Ohio Revised Code § 4113.15 - Ohio Prompt Pay Act)

71. All of the preceding paragraphs are realleged as if fully rewritten herein.

72. During relevant times, Defendants were each covered by the OPPA; and Plaintiff was employed by Defendants within the meaning of the OPPA.

73. The OPPA requires that the Defendants pay Plaintiff all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half

of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

74. During relevant times, Plaintiff was not paid overtime wages at one and one-half times her regular rate within thirty (30) days of performing the work. *See* O.R.C. §4113.15(B).

75. Plaintiff's unpaid wages remain unpaid for more than thirty (30) days beyond her regularly scheduled payday.

76. Plaintiff has been harmed and continues to be harmed by Defendants' acts or omissions described herein.

77. In violating the OPPA, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law, and its actions entitle Plaintiff to liquidated damages in the amount of six percent of the amount of the unpaid overtime compensation owed or two hundred dollars, whichever is greater.

## COUNT IV
**(Disability Discrimination and Retaliation Against Defendant ABMH Only - Ohio Revised Code § 4112.02)**

78. All of the preceding paragraphs are realleged as if fully rewritten herein.

79. At all times material herein, Plaintiff suffers from deep vein thrombosis ("DVT"), which is a physical impairment constituting a disability because it substantially limits her ability to perform several major life activities and/or major life functions.

80. Defendant ABMH knew that Plaintiff was disabled and/or regarded her as disabled.

81. At all times relevant herein, Plaintiff was able to perform the essential functions of her job despite her disability had her employer accommodated her minor request for a standing desk.

82. Accordingly, Plaintiff was an otherwise qualified individual.

83. During her employment with Defendants, Plaintiff also consistently met or exceeded her superiors' expectations.

84. At the beginning of April, 2017, Plaintiff requested an accommodation in the form of a standing desk, which is consistent with her physician's recommendations for her disability.

85. Defendant ABMH initially approved of Plaintiff bringing in and using a standing desk.

86. Plaintiff brought the standing desk into her work station.

87. However, upon review of the standing desk, a general manager of Defendant ABMH became furious with Plaintiff and would not allow her to use the standing desk.

88. The standing desk remained packed in the shop without use.

89. Plaintiff was not permitted to use it despite her request that it would help ameliorate her symptoms associated with her disability.

90. In the middle of April, 2017, during a meeting among many employees of Defendant ABMH, the same general manager chastised Plaintiff in front of everyone for bringing in the standing desk.

91. Plaintiff was shocked, humiliated, embarrassed, and felt like an outcast.

92. Plaintiff's request to use a standing desk, which was consistent with her primary care physician's recommendations, was reasonable and did not present an undue hardship for Defendant.

93. Rather than engaging in the interactive process or providing Plaintiff's requested accommodation, Defendant fired her on or about May 8, 2017, and replaced her with someone that

after a reasonable opportunity for further investigation or discovery Plaintiff will likely be able to show is neither disabled nor perceived to be disabled by Defendant ABMH.

94. Given her unblemished work history, the temporal proximity between her request for an accommodation, the public chastisement of Plaintiff's request for an accommodation by a managerial employee, her termination, and the admission that at the time of the termination it was for "lack of performance" without any disciplinary history regarding same to justify it, it is plausible to infer that the reason for the termination was her disability, Defendant ABMH's perception of her as disabled, and/or in retaliation for requesting a standing desk.

95. By Defendant's foregoing omissions and commissions, Defendant ABMH has violated Ohio Revised Code § 4112.02(A) and (I).

96. The Defendant's aforedescribed actions were taken with a conscious disregard for the rights of Plaintiff, causing Plaintiff to lose wages, salary, employment benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and entitling her to reinstatement, and to recover her actual damages, interest thereon, punitive damages, attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

### COUNT V
**(Ohio Revised Code § 4112, *et seq.* - Sexual Harassment Hostile Work Environment Against Defendant ABMH Only)**

97. All of the preceding paragraphs are realleged as if fully rewritten herein.

98. Plaintiff is a female and a member of a protected class.

99. At all times relevant during Plaintiff's employment with Defendant ABMH, she was subjected to various forms of sexual harassment, which were both severe and frequent in nature.

100. By way of illustration and not limitation, Glenn Carpenter ("Glenn"), a managerial employee and supervisor of Plaintiff, often inquired about the frequency of Plaintiff's sexual activity, Glenn indicated to Plaintiff that he enjoyed walking around naked and being scratched during sexual intercourse, asked Plaintiff whether she enjoyed "having sex with men in the ass," made references directed at Plaintiff to toys he used or would like to use during sexual intercourse, and Glenn pulled Plaintiff's hair in a sexually suggestive manner.

101. The above-referenced examples were offensive to and unwelcomed by Plaintiff.

102. The above-referenced examples were directed at Plaintiff because of her sex, as Glenn does not direct the same behavior to similarly situated males.

103. The above-referenced examples fell within the scope of Glenn's employment and were foreseeable because Glenn was fond of and had a crush on Plaintiff.

104. Defendant failed to adequately and effectively prevent and/or correct the sexually harassing behavior.

105. As a direct and proximate result of Defendant's actions and inactions enumerated above, Plaintiff suffered from a hostile work environment based on sex to exist and has and will continue to lose certain fringe benefits, including but not limited to, lost wages and income, loss of benefits, had the acts and failures to act complained of herein never occurred, in a dollar amount as allowed by law and as will be fixed by the jury and be proven at trial.

106. Defendant has willfully and/or intentionally and/or with callous and reckless indifference, violated Plaintiff's rights under Ohio law prohibiting sex discrimination and sexual harassment, so as to entitle her to an award of punitive damages in addition to compensatory or any other damages to be awarded, in an amount to be proven at trial.

## COUNT VI
## (Negligent Hiring and/or Retention Against Defendant ABMH Only)

107. All of the preceding paragraphs are realleged as if fully rewritten herein.

108. Plaintiff was employed by Defendant ABMH.

109. Defendant ABMH owed an affirmative duty to provide Plaintiff with a safe work environment free from sexual harassment and other harm.

110. Defendant ABMH breached that duty by hiring and/or retaining Glenn as a managerial employee of Defendant ABMH because Glenn created an unsafe and hostile work environment based upon sexual harassment as enumerated above.

111. The aforedescribed conduct was so frequent in nature that it subjected Plaintiff to a hostile work environment because of her sex to exist.

112. Sexually harassing an employee who Glenn directly oversees is not competent behavior.

113. As a direct and proximate result of Defendant ABMH's negligence in hiring or retaining Glenn, Plaintiff was damaged, by way of illustration and not limitation, in the form of inconvenience, aggravation, frustration, humiliation, embarrassment, anguish, mental stress, reluctance, turmoil, helplessness, and other nonpecuniary losses.

V. **PRAYER FOR RELIEF**

**WHEREFORE**, as to **Counts I** through **III**, the Plaintiff requests judgment against the Defendants as follows:

A. Finding that Defendants have failed to keep accurate records in accordance with the FLSA;

B. Finding that Plaintiff is entitled to prove her hours worked and damages with reasonable estimates;

C. Awarding Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the FLSA;

D. Awarding Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by Ohio law;

E. Awarding Plaintiff costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses associated with this action;

F. Awarding Plaintiff reasonable attorneys' fees associated with this action;

G. Issuing an injunction prohibiting Defendants from engaging in present, ongoing and future violations of the FLSA and Ohio law;

H. Granting Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

I. Directing such other and further relief as the Court may deem just or appropriate.

**WHEREFORE**, as to **Counts IV** through **VI**, the Plaintiff requests judgment against Defendant ABMH as follows:

J. Ordering ABMH to reinstate Plaintiff;

K. Ordering ABMH to pay monetary relief in an amount sufficient to compensate Plaintiff for the wages and benefits lost up to the time of her reinstatement;

L. Awarding Plaintiff costs and reasonable attorneys' fees associated with this action;

M. Ordering ABMH to pay monetary relief in the amount sufficient to compensate Plaintiff for future wages and benefits lost in the event reinstatement is not feasible;

N. Ordering ABMH to pay liquidated damages in an amount equal to her actual damages;

O. Order ABMH to pay punitive damages;

P. Ordering ABMH to pay pre-judgment interest and post-judgment interest; and

Q. Directing such other and further relief as the Court may deem just or appropriate.

Respectfully submitted,

/s/ *Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1457 S. High St.
Columbus, Ohio 43207
Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)
**BRYANT LEGAL, LLC**
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a jury trial of eight (8) persons to hear all issues so triable.

/s/ *Daniel I. Bryant*
Daniel I. Bryant (0090859)